Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br>**Michael R. Langston**,<br>    Debtor. | Case No. 21-31041-dwh7 |
| **Alicia Sitren**,<br>    Plaintiff,<br>  v.<br>**Michael R. Langston**,<br>    Defendant. | Adversary Proceeding No. 21-3035-dwh<br><br>MEMORANDUM DECISION GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Not for Publication |

**I. Background**

Alicia Sitren filed this action against Michael Langston, the debtor in this chapter 7 case. She seeks to have her claim against him excepted from discharge under 11 U.S.C. § 523(a)(5) or (a)(15). She also seeks to prevent entry of his discharge altogether under section 727(a)(4). (Section references are to title 11 of the U.S. Code.)

Page 1 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

Sitren has moved for summary judgment on the 523(a)(15) claim or, alternatively, the 523(a)(5) claim.[1]

For the reasons that follow, I will grant the motion as to the 523(a)(15) claim, the complaint's second claim for relief.

## II. Summary judgment

Summary judgment is available if there is no genuine dispute of fact, and the movant is entitled to judgment as a matter of law.[2]

Sitren seeks summary judgment based in part on the issue-preclusive effect of a judgment that she obtained in a Florida state court. The preclusive effect of a state-court judgment depends on state law.[3] Under Florida law, issue preclusion applies when the same issue has previously been fully litigated by the same parties (or their privies) in a proceeding that resulted in a final decision of a court of competent jurisdiction.[4]

Although Langston did not respond to the motion and thus has forfeited the opportunity to challenge the facts on which Sitren relies, I still must determine whether those facts warrant judgment for her on the 523 claim.

## III. Undisputed facts

The following facts are undisputed.

Sitren and Langston were married in Florida and stayed married until 2017.[5]

On November 13, 2017, they entered into a contract entitled "Langston – Sitren Contract For Uncontested Divorce and Division of Jointly Owned Property."[6] "Flood

---

[1] ECF No. 15.
[2] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.
[3] 28 U.S.C. § 1738; Gonzales v. California Dep't of Corr., 739 F.3d 1226 (9th Cir. 2014).
[4] City of Oldsmar v. State, 790 So. 2d 1042, 1046 n.4 (Fla. 2001).
[5] ECF No. 1 ¶ 5; ECF No. 5 ¶ 5.
[6] ECF No. 17 Ex. 3.

Page 2 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

Case 21-03035-dwh    Doc 22    Filed 02/17/22

insurance checks" were to be cashed, and the contract specified the way in which the money was to be used. One check for about $43,000 was to be "invested back into the [marital] house and . . . devoted to addressing repairs itemized in the insurance adjusters [*sic*] report," with any surplus to be split equally between the parties.[7] A second check for about $16,000 was to be "divided based on the itemized insurance adjusters [*sic*] report."[8] The repairs were to be "completed properly and as quickly as possible" after which the house was to be listed for sale within a week.[9]

According to the contract, Langston then lived at the house, and Sitren did not.[10] He undertook to make the mortgage payments and to "take the lead on house flood repairs and realtor negotiations."[11] Upon the sale of the house, the net proceeds were to be split equally.[12]

The parties agreed in the contract to sign and file "divorce paperwork at the courthouse" on or before November 17, 2017.[13]

A Florida state court considering the divorce held an evidentiary hearing on November 20, 2017, and entered a judgment dissolving the parties' marriage on December 17, 2017. The divorce judgment required each party to "be responsible for any indebtedness incurred in their name alone and [] indemnify and hold harmless the other from said debt."[14]

---

[7] ECF No. 17 Ex. 3 ¶ 4.
[8] ECF No. 17 Ex. 3 ¶ 5.
[9] ECF No. 17 Ex. 3 ¶¶ 7, 8.
[10] ECF No. 17 Ex. 3 ¶ 10.
[11] ECF No. 17 Ex. 3 ¶¶ 8, 10.
[12] ECF No. 17 Ex. 3 ¶ 9.
[13] ECF No. 17 Ex. 3 ¶ 3.
[14] ECF No. 17 Ex. 4.

Page 3 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

In 2018, Sitren filed a complaint against Langston in Florida state court seeking damages for civil theft, breach of contract, partition of the home, and specific performance of the contract.[15] The complaint alleged that, after the flood repairs were completed as contemplated in the contract, Langston retained the balance of the insurance proceeds, $9,300, instead of dividing them with Sitren as their contract required.[16] This allegation was the basis of both the breach-of-contract and the theft claims. Sitren's theory in support of the theft claim was that half of the remaining insurance proceeds were her property, which Langston had unlawfully kept from her.[17] And her theory in support of the breach-of-contract claim was that Langston had failed to comply with the contractual provision requiring him to share the funds.[18]

Sitren filed in her 2018 action two motions for summary judgment and a motion for reimbursement, all of which the court granted. The order and judgment granting the first summary-judgment motion, filed on January 24, 2019, granted her treble damages of $27,900 on her civil-theft claim because Langston had "improperly cash[ed]" the insurance checks, "fail[ed] to remit to [Sitren] her share of these funds, and then using her funds to make mortgage payments on the former marital home which [Langston] contractually agreed would be solely his responsibility." The order and judgment also awarded interest of $1,370.65 as of January 24, 2019. He was ordered to "continue to comply with all terms of the Agreement concerning the former marital home [the

---

[15] ECF No. 17 Ex. 5.
[16] ECF No. 17 Ex. 5 ¶¶ 3-6.
[17] ECF No. 17 Ex. 5 ¶¶ 7-10.
[18] ECF No. 17 Ex. 5 ¶¶ 11-17.

Page 4 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

contract], including but not limited to making the mortgage and other payments to keep the property in good condition for sale."[19]

In the reimbursement motion, filed on August 17, 2020, Sitren sought judgment for $64,539.30, which Langston had been obligated by the first order and judgment and the contract to pay but that Sitren had paid when he failed to do so.[20] That motion also sought attorney fees of $18,340[21] and permission for Sitren to retain the net proceeds of sale of the home, $3,842.98, on account of amounts due from Langston to her.[22] The motion restated the amount of the first order's civil-theft judgment as $29,270.65 plus interest of $3,187.88 as of September 20, 2020, for total of $32,458.53. It also sought an award of attorney fees of $5,862.50 in connection with the civil-theft claim.[23]

The second summary-judgment order, dated September 24, 2020, granted the relief that Sitren requested request in her reimbursement motion.[24] On the same day, the state court entered a final judgment in the 2018 action, awarding total damages of $119,278.84 against Langston.[25]

## IV. Analysis

### A. *Comparing paragraphs (5) and (15) of sections 523(a)*

Sitren seeks to except the unpaid balance of her judgment from Langston's discharge under section 523(a)(15) and, alternatively, under section 523(a)(5).

---

[19] ECF No. 17 Ex. 7 2-4.
[20] ECF No. 17 Ex. 9 ¶ 2.
[21] ECF No. 17 Ex. 9 ¶ 3.
[22] ECF No. 17 Ex. 9 ¶ 4.
[23] ECF No. 17 Ex. 9 ¶ 5.
[24] ECF No. 17 Ex. 10.
[25] ECF No. 17 Ex. 11.

Page 5 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

Case 21-03035-dwh    Doc 22    Filed 02/17/22

Section 523(a)(5) applies to "a domestic support obligation" (DSO), which is defined in section 101(14A)(B) to mean a debt "in the nature of alimony, maintenance, or support." Section 523(a)(15) applies to debts, other than DSOs, that are "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record[.]" DSOs (under (a)(5)) are always nondischargeable, but other divorce-related debts (under (a)(15)) are dischargeable only in chapter 13. In this chapter 7 case, nothing turns on which of the two categories Sitren's claim falls into, as long as it falls into one of them. But because the two categories are mutually exclusive, I must consider them separately.

Although Sitren seeks a ruling on her claim under section 523(a)(5) only in the alternative to her claim under section 523(a)(15), an element of the latter claim is that the debt owed to her does not constitute a DSO. I have no argument from her supporting characterization of the debt owed to her as a DSO; the debt arises from an agreed division of marital property and debts; and there is no indication in the record that the amounts due to Sitren were in the nature of support. For those reasons—and for the purpose of determining whether she has a 523(a)(15) claim—I find that the debt owed to her is not a DSO.

B. *Applying section 523(a)(15)*

Most of Sitren's argument is dedicated to demonstrating that her claim is a 523(a)(15) debt. I agree that it is.

A debt is nondischargeable under section 523(a)(15) if it is "incurred by the debtor in the course of a divorce or . . . in connection with a . . . divorce decree." Had Congress wanted to encompass a narrower set of debts, such as only those first arising in a divorce decree, it could have done so by instead using a phrase such as "incurred in a

Page 6 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

Case 21-03035-dwh    Doc 22    Filed 02/17/22

divorce decree." But it chose to include the expansive phrases "in the course of a divorce" and "in connection with" (rather than "in") "a . . . divorce decree." Both phrases describe Langston's obligations incurred in the contract.

In *In re Short*,[26] a 2000 Ninth Circuit decision, the court held that section 523(a)(15) excepted from discharge the debtor's ex-wife's prenuptial loan to the debtor, which he had agreed to pay in their stipulated dissolution judgment. Although the court found it significant that the debtor's obligation to repay the debt was restated in the parties' divorce decree,[27] it also held that section 523(a)(15) can encompass a debt arising before divorce, and it did not limit the section's application to debts arising in or even expressly incorporated into a divorce decree.

Although the judgment against Langston was entered in the 2018 action, which is distinct from the 2017 divorce proceeding, the components of the judgment are awards on account of his breach of the contract, including the stolen insurance proceeds, reimbursement of amounts that he was required to pay but were paid by Sitren, interest on those amounts, and attorney fees incurred in litigating those claims.

That the contract was entered into "in the course of a divorce" is made clear in three ways: (1) its subtitle is "For Uncontested Divorce and Division of Jointly Owned Property," (2) its first sentence is "This document is a contract . . . for uncontested divorce and division of jointly owned property [1407 Caddell Drive],"[28] and (3) the second sentence of paragraph 3 says that "[u]n contested divorce paperwork will be signed and filed at the courthouse on or before November 17, 2017 at 11 a.m." The

---

[26] 232 F.3d 1018 (9th Cir. 2000).
[27] 232 F.3d at 1022-23.
[28] ECF No. 17 Ex. 3 ¶ 1 (bracketed text in original).

Page 7 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

Case 21-03035-dwh    Doc 22    Filed 02/17/22

parties did in fact file for divorce and had an evidentiary hearing in that proceeding on November 20, 2017, seven days after they signed the contract.

Although the parties' divorce judgment did not specifically refer to the contract, the judgment did require each party to pay indebtedness incurred in that party's name alone and to indemnity the other party from that debt. Because Langston's obligations under the contract are his own, the divorce judgment had the effect of requiring him to pay his contract obligations and to hold Sitren harmless from them.

Thus, the later civil-action judgment against Langston is entirely for debts that are attributable to the contract and thus were "incurred by [Langston] in the course of a divorce or . . . in connection with a . . . divorce decree." The judgment is nondischargeable under section 523(a)(15).

## V. Conclusion

I will grant the motion, as to the second claim for relief under section 523(a)(15), by order that I will prepare.

###

Page 8 of 8 – Memorandum Decision Granting Plaintiff's Motion for Summary etc.

Case 21-03035-dwh    Doc 22    Filed 02/17/22